**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| APRIL BAINTER, on behalf of herself and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-cv-07064 |
| v. | ) | |
| | ) | Judge Bucklo |
| AKRAM INVESTMENTS, LLC, | ) | |
| MOHAMMAD MASWADI, MONTASER | ) | |
| MASWADI AND THAER MASWADI | ) | |
| | ) | Magistrate Judge Valdez |
| Defendants. | ) | |

**INDEX OF EXHIBITS TO PLAINTIFFS' UNOPPOSED MOTION FOR**
**APPROVAL OF SETTLEMENT, FOR APPOINTMENT OF SETTLEMENT**
**ADMINISTRATOR, AND FOR APPROVAL OF SERVICE AWARDS AND**
**ATTORNEYS' FEES AND COSTS**

Joint Stipulation of Settlement ...........................................................................................1

    List of Opt-in Plaintiffs' Settlement Amounts ................................................ A

    Settlement Cover Letter .............................................................................B

[Proposed] Order Approving Settlement, Appointing Settlement Administrator, Approving
Service Awards and Attorney's Fees and Costs ...........................................................2

Declaration of Douglas M. Werman ...............................................................................3

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

APRIL BAINTER, on behalf of herself and )
all others similarly situated, )
)
       Plaintiff, )
)    Case No. 1:17-cv-07064
   v. )
)    Honorable Maria Valdez
AKRAM INVESTMENTS, LLC, )
MOHAMMAD MASWADI, MONTASER )
MASWADI AND THAER MASWADI )
)
      Defendants. )

**JOINT STIPULATION OF SETTLEMENT**

This Joint Stipulation of Settlement ("Joint Stipulation") is made and entered into by,

between, and among April Bainter, on behalf of herself and the Opt-in Plaintiffs, and Defendants

Akram Investments, LLC, Mohammad Maswadi, Montaser Maswadi and Thaer Maswadi, and is

conditioned upon the Court's approval.

1.    <u>DEFINITIONS</u>

The following terms, when used in this Joint Stipulation, have the meanings set forth

below, except when they are otherwise or more precisely defined in another section.

(a)    "Action" means the civil action filed in the Court, captioned *Bainter v. Akram*

*Investments, LLC, et al.,* Case Number 1:17-cv-07064.

(b)    "Plaintiffs' Counsel" or "Class Counsel" means Werman Salas P.C.

(c)    "Court" means the United States District Court for the Northern District of

Illinois.

(d)    "Defendants" mean Akram Investments, LLC, Mohammad Maswadi, Montaser

Maswadi and Thaer Maswadi.

1

(e)      "Effective Date" means the date on which the Court enters an Order approving the Joint Stipulation.

(f)      "Named Plaintiff" means April Bainter.

(g)      "Opt-In Plaintiffs" are identified on Attachment A, attached hereto, and include persons who filed Consent Forms to be party-plaintiffs to the Action, and excluding any person who withdrew his or her Consent Form.

(h)      "Plaintiffs" mean the Named Plaintiff and the Opt-in Plaintiffs, collectively.

(i)      "Parties" means Plaintiffs and Defendants, collectively and, separately, each "Party."

(j)       "Released Parties" means Defendants and their former and present parents, subsidiaries, and affiliated corporations, and their officers, directors, employees, partners, shareholders, insurers, attorneys, heirs, estates and agents, and any other successors, assigns, or legal representatives.

(k)       "Settlement" shall mean the resolution of the Action as effectuated by this Joint Stipulation.

(l)      "Settlement Account" shall be a Qualified Settlement Fund established by the Settlement Administrator under Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, *et seq*.

(m)      "Settlement Class Members" means the Named Plaintiff and the Opt-In Plaintiffs identified in Attachment A.

(n)      "Gross Settlement Amount" means the total amount of the Settlement that will be funded by Defendants in the amount of $210,000, and that will be distributed in accordance with this Joint Stipulation. The Gross Settlement Amount excludes Defendants' obligation to pay the

2

employer's share of applicable state and federal payroll taxes, which Akram Investments, LLC will pay separate and apart from the Gross Settlement Amount.

(o)     The "Net Settlement Amount" is the amount available from the Gross Settlement Amount for the *pro rata* Settlement Payments to Settlement Class Members and shall be the Gross Settlement Amount minus the amounts paid to: (1) the Named Plaintiff for her retaliation claim; (2) the Named Plaintiff and Opt-In Plaintiffs Lymarie Colon Calzada and Hector Maisonet as Service Awards; (3) Class Counsel for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses; and (4) the Settlement Administrator for Settlement Administration Expenses.

(p)     "Settlement Payments" means the amounts to be paid to Settlement Class Members from the Net Settlement Amount as described in Section 5 of this Joint Stipulation.

(q)     "Settlement Time Period" means the period between October 1, 2014 and July 18, 2018.

(r)     "Settlement Administrator" means Analytics Consulting LLC.

2.     <u>REASONS FOR SETTLEMENT</u>

(a)     Plaintiffs' Counsel has diligently and thoroughly investigated the facts of the Action. Plaintiffs' Counsel obtained information and documents from the Named Plaintiff, certain Opt-in Plaintiffs, and obtained payroll data from Defendants. Plaintiffs' Counsel used their interviews with the Plaintiffs and their analysis of Defendants' payroll records to calculate the amount of wages that each Settlement Class Member might recover in the litigation.  Based on those calculations, Plaintiffs' Counsel believes that the Gross Settlement Amount and other terms set forth in this Agreement represent the resolution of a bona-fide dispute between the Parties, is fair and reasonable, and is in the best interests of Plaintiffs.  Plaintiffs' Counsel also

has taken into account the uncertainty and risks inherent in any litigation, especially in complex collective actions like this one where the Defendants have claimed inability to pay a judgment.

(b)     Although the Parties do not abandon the positions they took in the Action, they believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests.  In light of these realities, the Parties believe that this Agreement, which was negotiated at arms' length between experienced counsel over several months, is fair, reasonable and the best way to resolve the disputes between and among them.

3.     <u>THIS JOINT STIPULATION IS CONTINGENT ON COURT APPROVAL</u>

If, for any reason, the material terms of this Joint Stipulation are not approved by the Court, this Joint Stipulation will be void and of no force and effect.  Further, nothing from the settlement process, including documents created or obtained through the settlement process, shall be admissible as evidence in the Action or used in any way contrary to the Parties' respective interests.

4.     <u>STATEMENT OF NO ADMISSION</u>

Defendants deny all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the collective allegations asserted in the Action.  Defendants further deny that this Action is appropriate for collective treatment for any purpose other than settlement.  Defendants agree to resolve the Action via this Joint Stipulation, but to the extent that the Court shall not ultimately approve this Joint Stipulation of Settlement, Defendants do not waive, but rather expressly reserve, all rights to challenge any and all claims and allegations asserted by Named Plaintiff and Opt-In Plaintiffs in the Action should the case proceed, upon all procedural and substantive grounds, including without limitation the ability to challenge collective-action treatment on any grounds, and the parties shall revert to their positions *status quo ante* their execution of this Joint Stipulation of Settlement.

5. <u>MONETARY TERMS OF SETTLEMENT</u>

(a)     The Gross Settlement Amount shall be allocated as follows, subject to Court Approval.

    i.      An amount of $10,000 shall be paid to the Named Plaintiff to compensate her for her individual retaliation claim.

    ii.     An amount of no more than $130,000 to be paid to Plaintiffs' Counsel for Plaintiffs' Attorneys' Fees;

    iii.    An amount of $1,733.76 shall be paid to Plaintiffs' Counsel for reasonably incurred Litigation Expenses;

    iv.     An amount of $3,936.00 shall be paid to the Settlement Administrator for Settlement Administration Expenses. Plaintiff's Counsel shall select the settlement administrator, who shall be subject to Defendants' approval;

    v.      A Service Award in the amount of $2,500 to Named Plaintiff Bainter;

    vi.     A Service Award in the amount of $500 each to Opt-in Plaintiffs Lymarie Colon Calzada and Hector Maisonet who gave declarations to support Plaintiff's Motion to Bar Contact and Allow Corrective Notice.

(b)     The settlement amount that remains after the deductions described above Section 5(a) shall equal the Net Settlement Amount. The Net Settlement Amount shall be divided among Settlement Class Members *pro rata* based on the computation described below in Section 6 of this Agreement.

(c)     Akram Investments, LLC shall pay the employer's share of applicable state and federal payroll taxes associated with the Settlement Payments made to the Named Plaintiff and each Opt-In Plaintiff separate and apart from the Gross Settlement Amount as further set forth in Paragraph 6(b).

6.     COMPUTATION OF PRO RATA SETTLEMENT PAYMENTS

(a)     Each Settlement Class Member's Settlement Payment shall be calculated as follows:

(i)  Each Settlement Class Member's Total Overtime Wages shall equal the sum of Owed Overtime Premium Wages for all weeks from October 1, 2014 through July 18, 2018 using the following formula each work week:

(Commission + Bonus) ÷ Total Hours Worked = Additional OT Premium

Additional OT Premium * OT Hours * 0.5 = Owed Overtime Wages

(ii)     Each Settlement Class Member's Liquidated Damages shall equal the sum the Settlement Class Member is owed in Overtime Wages for the period three (3) years back from their opt-in date through July 18, 2018.

(iii)     Each Settlement Class Member who worked in Illinois shall be eligible for an award of Unauthorized Deductions, which shall equal the sum of the value of Payroll Items identified as "Employee Error" and "Employee Deduction" for the period between October 1, 2014 and July 18, 2018.

(iv)     Each Settlement Class Member's Total Overtime Wages, Liquidated Damages and Unauthorized Deductions shall be divided by the sum of all Settlement Class Members' Total Overtime Wages, Liquidated Damages, and Unauthorized Deductions.  The quotient shall represent each Settlement Class Member's Pro Rata Factor.

(v)     Each Settlement Class Member's Settlement Payment shall be computed by multiplying his or her Pro Rata Factor by the Net Settlement Amount.

(vi)     Each Settlement Class Member's Total Overtime Wages, Liquidated Damages, and Unauthorized Deductions awards shall be proportionately reduced consistent with the Settlement Class Member's ratable share of the Net Settlement Amount.

(vi)     All Settlement Class Members shall be eligible to receive a minimum Settlement Payment of $50.00 ("Minimum Settlement Payment").

(vii)     If a Settlement Class Member's Preliminary Settlement Payment is less than $50.00, the Settlement Class Member's Settlement Payment will be increased to the Minimum Settlement Payment of $50.00.

(viii)     All Minimum Settlement Payments shall be subtracted from the Net Settlement Fund, which shall yield the "Adjusted Net Settlement Fund."  Each Settlement Class Member whose Preliminary Settlement Payment exceeds $50.00 will have his or her Pro Rata Factor recalculated, omitting data from all Minimum Settlement Payment recipients, and that Recalculated Pro Rata Factor shall be divided by the Adjusted Net Settlement Fund.  The quotient will be referred to as the "Adjusted Pro Rata Factor." The Settlement Payment for each Settlement Class Member whose Settlement Payment exceeds $50.00 shall be computed by multiplying his or her Adjusted Pro Rata Factor by the Adjusted Net Settlement Fund. If, after the computations described in this paragraph are performed, any Settlement Class Member's Settlement Payment is less than $50.00, the calculations described in this paragraph will be repeated so that each Settlement Class Member is eligible to receive a minimum Settlement Payment of $50.00.

(ix)     Each Settlement Class Member's Settlement Payment, excluding the employee's share of any applicable tax withholdings, is identified in Attachment A.

(b)     The Settlement Administrator will issue a check for each Settlement Payment allocated as follows:

(i)     Each Settlement Class Member's proportionate share of Total Overtime Wages, and if applicable, Unauthorized Deductions will represent wages.  Regular employee payroll deductions shall be taken out of this portion of each Settlement Class Member's Settlement Payment as determined by the Settlement Administrator. Federal tax on that amount will be withheld for all Settlement Class Members based upon a flat withholding rate, which is reasonable and customary in accordance with Treas. Reg. 31.3402(g)-1(a)(2), and as is calculated by the Settlement Administrator. State tax will be withheld according to applicable state withholding requirements.  The Settlement Administrator shall issue each Settlement Class Member an IRS Form W-2 for this portion of the Settlement Payment.

(ii)     Each Settlement Class Member's proportionate share of Liquidated Damages will represent non-wage income.  Payroll deductions and income taxes shall not be taken from this portion of each Settlement Class Member's Settlement Payment. The Settlement Administrator will issue each Opt-In Plaintiff an IRS Form 1099 for the liquidated damages portion of each Settlement Payment if required by the I.R.S. regulations.

(iii)     The Service Awards for the Named Plaintiff and Opt-in Plaintiffs Lymarie Colon Calzada and Hector Maisonet shall be treated as non-wage income. The Settlement Administrator shall issue the Named Plaintiff and Opt-In Plaintiffs Lymarie Colon Calzada and Hector Maisonet, as identified in subsection 4(a)(v)-(vi), above, an IRS Form 1099 for each of their Service Awards.

(iv)     The back of each check to each Settlement Class Member will contain the following limited endorsement:

8

I agree to release all claims or causes of action against the Released Parties from October 1, 2014 until July 18, 2018, for unpaid overtime wages that were asserted in the Action (Case No. 1:17-cv-07064, N.D. Ill.) or that arise out of facts asserted in the Action. If I worked in Illinois, I also agree to release all claims or causes of action from October 1, 2014 until July 18, 2018, for unauthorized deductions taken from wages in violation of the Illinois Wage Payment and Collection Act.

(c)     Akram Investments, LLC shall be responsible for payment of the employer's portion of all applicable payroll taxes for each Settlement Payment made pursuant to Section 6(b)(i). Other than the withholding and reporting requirements herein, Settlement Class Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Joint Stipulation.

(d)     To the extent permitted by law, in no event shall any Settlement Payment or Service Award create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

7.     <u>RELEASE OF CLAIMS</u>

(a)     In exchange for their Settlement Payments, Opt-In Plaintiffs shall be deemed to have released and discharged the Released Parties from:

All claims or causes of action from October 1, 2014 through July 18, 2018, for unpaid overtime wages that were asserted in the Action, or that arise out of facts asserted in the Action, including claims under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, federal or state law, or common law, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest.

9

(b)     Opt-in Plaintiffs who worked for Defendants in Illinois also shall be deemed to have released and discharged the Released Parties from:

> All claims or causes of action from October 1, 2014 through July 18, 2018, for unauthorized deductions taken from wages in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/9, including any related claims for penalties, attorneys' fees and costs, and interest.

(c)     Following the Court's approval of this Settlement Agreement, Defendants shall waive and release all known and unknown claims and causes of action of any kind against Named Plaintiff, including, but not limited to:

(i)      all claims raised or which could have been raised in the Action;

(ii)     all claims, actions, causes of action, class allegations, demands, damages, costs, liabilities, debts, obligations, attorneys' fees, loss of wages and benefits, loss of earning capacity, mental anguish, pain and suffering, or other relief permitted to be recovered or related to, or in any way growing out of Named Plaintiff's contact with, employment with, treatment at, wages from, or separation of employment from Defendants; and

(iii)    all claims arising under any Federal, State, or municipal statute, order, regulation, or ordinance on account of, or any damages or injury related to or in any way growing out of Named Plaintiff's contact with, employment with, treatment at, compensation from, or separation of employment from Defendants; and

(iv)     all claims arising under common law, including, but not limited to, tort claims or breach of contract claims (express or implied), intentional interference with contract, intentional infliction of emotional distress, negligence, defamation, violation of public policy, wrongful or retaliatory discharge, tortious interference with contract, and promissory estoppel, on account of, or any damages or injury related to or in any way growing out of Named

Plaintiff's contact with, employment with, treatment at, compensation from, or separation of employment from Defendants.

(d)     Following the Court's approval of this Settlement Agreement, Named Plaintiff shall waive and release all known and unknown claims and causes of action of any kind against Released Parties, including, but not limited to:

(i)     all claims raised or which could have been raised in the Action;

(ii)     all claims, actions, causes of action, class allegations, demands, damages, costs, liabilities, debts, obligations, attorneys' fees, loss of wages and benefits, loss of earning capacity, mental anguish, pain and suffering, or other relief permitted to be recovered or related to, or in any way growing out of Named Plaintiff's contact with, employment with, treatment at, wages from, or separation of employment from Defendants;

(iii)     all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, the National Labor Relations Act, as amended, the Equal Pay Act, the Fair Labor Standards Act, as amended, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, as amended, the Family and Medical Leave Act, 42 U.S.C. § 1981, the Employee Retirement Income Security Act, as amended, and any other Federal, State, or municipal statute, order, regulation, or ordinance on account of, or any damages or injury related to or in any way growing out of Named Plaintiff's contact with, employment with, treatment at, compensation from, or separation of employment from Defendants; and

(iv)     all claims arising under common law, including, but not limited to, tort claims or breach of contract claims (express or implied), intentional interference with contract, intentional infliction of emotional distress, negligence, defamation, violation of public policy, wrongful or retaliatory discharge, tortious interference with contract, and promissory estoppel,

11

on account of, or any damages or injury related to or in any way growing out of Named Plaintiff's contact with, employment with, treatment at, compensation from, or separation of employment from Defendants.

8.    ATTORNEYS' FEES AND EXPENSES AND NAMED PLAINTIFF'S AND CERTAIN OPT-IN PLAINTIFFS' SERVICE AWARDS

(a)    Class Counsel may apply to the U.S. District Court for the Northern District of Illinois, or any other Court taking jurisdiction over the Action, for an award of Plaintiffs' Attorneys' Fees and an award of Plaintiffs' Litigation Expenses.  The amount of the Plaintiffs' Attorneys' Fees will not exceed $130,000.00. The amount of Plaintiffs' Litigation Expenses shall not exceed $1,733.76. Such application shall be filed in connection with the Motion for Approval of the Joint Stipulation. Defendants shall not object or otherwise comment on this application for fees or costs, unless directed to do so by the Court.

(b)    Plaintiffs and Plaintiffs' Counsel understand and agree that any fee payments made under Section 8 of this Joint Stipulation will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Plaintiffs in the Action, and any other attorneys' fees and costs associated with the investigation, discovery, settlement, and/or prosecution of the Action.  The Named Plaintiff and Plaintiffs' Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge, and covenant and agree not to sue, institute, or cause to institute any further proceedings in any court or comparable forum against, Defendants with respect to any liability for such fees and/or costs. Nothing in this Section shall preclude Plaintiffs from appealing the allocation of Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses should the sum awarded by the Court fall below the amount requested by Plaintiffs' Counsel provided that it is consistent with the provision of this Stipulation. If Plaintiffs' Counsel elect not to appeal or if the Court of Appeals

12

affirms the decision, only the reduced amounts will be deemed to be Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses for purposes of this Joint Stipulation. Any amounts for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses not awarded shall be added to the Net Settlement Fund available for distribution to Settlement Class Members.

(c)     All of Defendants' own legal fees, costs and expenses incurred in this Action shall be borne by Defendants.

(d)     Class Counsel shall apply for a Service Award for Named Plaintiff in an amount not to exceed $2,500.00, in acknowledgment of her time and effort spent prosecuting this Action on behalf of Settlement Class Members, including conferring with Class Counsel, searching for and providing documents, attending the settlement conference, and in recovering wages on behalf of all Opt-In Plaintiffs. The Service Award shall be paid from the Settlement Fund. Defendants agree not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation. Any amount requested but not awarded for the Named Plaintiff's Service Award shall be added to the Net Settlement Fund available for distribution to Settlement Class Members.

(e)     Class Counsel shall apply for Service Awards not to exceed Five Hundred Dollars ($500.00) each to Opt-In Plaintiffs Lymarie Colon Calzada and Hector Maisonet in acknowledgment of their time and effort spent preparing declarations to support the Named Plaintiff's Motion to Bar Contact and Allow Corrective Notice. The Service Awards shall be paid from the Settlement Fund. Defendants agree not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation. Any amount requested but not awarded for the Opt-in Plaintiff's Service Awards shall be added to the Net Settlement Fund available for distribution to Settlement Class Members.

9.  SETTLEMENT TIMELINE

The Parties agree to follow the following timeline for the completion of the Settlement and dismissal of the Action:

(a)  Stay of Action: Pending the Court's approval of the Settlement, the Parties agree to stay the Action and agree not to litigate any discovery issues.

(b)  Settlement Approval and Supplementation of Data: Plaintiff shall draft and file an Unopposed Motion for one-step Approval of this Joint Stipulation of Settlement as soon as practicable. Defendants warrant that they have provided Plaintiffs' Counsel with complete payroll records in Defendants' control or possession for all Opt-in Plaintiffs for the period between October 1, 2014 and July 18, 2018 ("Defendants' Payroll Records"). If an Opt-in Plaintiff believes Defendants did not produce some or all of Defendants' Payroll Records as they relate to the Opt-in Plaintiff, the Opt-in Plaintiff must inform Defendants within ninety (90) days of the Settlement Administrator mailing the Settlement Payments as set forth in paragraph 9(g). If the Opt-in Plaintiff timely notifies Defendants that Defendants failed to provide Defendants' Payroll Records for him or her, and it is later determined by the Court, or mutual agreement of the Parties, that Defendants' Payroll Records were not complete as it related to the Opt-in Plaintiff, Defendants will supplement such payroll data within fourteen (14) days of such determination to Plaintiffs' Counsel, who will then calculate the Settlement Payments for that Opt-in Plaintiff using the same methodology used to calculate Settlement Payments as sort forth in this Joint Stipulation of Settlement or as otherwise approved by the Court.  Defendants agree to pay the difference between the amount of the initial Settlement Payment and the corrected Settlement Payment outside the Gross Settlement Fund.  Defendants are not obligated to make any corrected Settlement Payment to any Opt-in Plaintiff who does not timely notify Defendants that Defendants' Payroll Records were incomplete.

14

(c)     <u>Production of Class Data</u>: Within ten (10) days of entry of the Order approving the Joint Stipulation, Class Counsel shall provide the Settlement Administrator with the last known mailing addresses, telephone numbers, and state worked for all Settlement Class Members identified in Attachment A. Also within ten (10) days of entry of the Order approving the Joint Stipulation, Defendants shall provide the Settlement Administrator with the social security numbers of all Settlement Class Members identified in Attachment A. Defendants also agree to provide any other information requested by the Settlement Administrator that is necessary to administer the Settlement.

(d)     <u>Payment of the Employer Share of Payroll Taxes</u>: Within seven (7) days of receiving the class data from Class Counsel, the Settlement Administrator shall determine the employer's share of payroll employment taxes on Settlement Payments to Settlement Class Members and shall communicate such amount to Defendants with a detailed explanation of the calculations.  In the event of any dispute as to the calculation of employer's share of payroll taxes, the Parties and Settlement Administrator shall meet and confer in a good faith attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings.  Defendants agree to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Section.

(e)     <u>Payment of Total Settlement Payment</u>: Defendants will deposit $210,000.00, plus the employer's share of applicable payroll taxes into the Settlement Account (the deposits are

collectively referred to as the "Total Settlement Payment"), within thirty days (30) days after the Court enters an Order approving the Joint Stipulation.

(f)      <u>Update of Settlement Class Members' Addresses</u>: Prior to mailing the Settlement Payments, the Settlement Administrator will verify the most recent mailing address for Settlement Class Members by using the National Change of Address (NCOA) Database, or a comparable database. The Settlement Administrator will notify Class Counsel of any address updates prior to the mailing of the Settlement Payments to Settlement Class Members.

(g)      <u>Issuance of Settlement Payments, Service Awards and Class Counsel's Fees and Expenses</u>: The Settlement Administrator shall make the following payments:

(i)      Within ten (10) days after its receipt of the Total Settlement Payment, the Settlement Administrator shall deliver Settlement Payments via First Class U.S. Mail to each Opt-In Plaintiff for his or her ratable share of the Settlement Fund as computed in Section 6 of this Joint Stipulation. The Settlement Payment checks shall be negotiable by Settlement Class Members for 150 days from the date they were mailed by the Settlement Administrator.  The Settlement Administrator shall include a cover letter, attached as Attachment B, with each check to each Settlement Class Member that briefly explains why the Settlement Class Members is receiving a Settlement Payment and what the Settlement Payment represents. The face of each check shall clearly state that the check must be cashed within 150 days.  An envelope containing a Settlement Payment shall be marked on its face with the words "Important Notification re: Akram Investments Lawsuit."

(ii)      Within ten (10) days after its receipt of the Total Settlement Payment, the Settlement Administrator shall deliver the Service Awards via First Class U.S. Mail to the Named Plaintiff and the Opt-in Plaintiffs who are eligible to receive a Service Award.

16

(iii)     Within ten (10) days after its receipt of the Total Settlement Payment, the Settlement Administrator shall deliver Class Counsel's award for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses, by wire transfer or check, to Class Counsel as Class Counsel directs.

(iv)     If any Settlement Payment check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will forward the Settlement Payment to the forwarding address.  If any Settlement Payment is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will attempt to contact the Settlement Class Member via telephone and, if unsuccessful, will run a new search of the Settlement Class Member's social security number and name through available databases, such as Accurint, and will forward the Settlement Payment to the new address obtained in this manner, if any. If, after this second mailing, the Settlement Payment is again returned as undelivered, and if no forwarding address is provided by the Settlement Class Member or otherwise located within the 150-day check cashing period, the Settlement Payment distribution process shall end for that Settlement Class Member.

(v)     Within seven (7) days after the expiration of the 150 day check cashing period, the Settlement Administrator shall provide to Defendants and Class Counsel a list, in Excel format, of the names of all Settlement Class Members who negotiated their Settlement Checks, including for each: (1) the amount of the Settlement Class Member's Settlement Payment; (2) the amount of the Settlement Payment attributed to wages; and (3) the amount of the Settlement Payment attributed to liquidated damages.

(vi)     After expiration of the 150-day check cashing period, checks that are not cashed will escheat to the state where the Opt-In Plaintiff worked as unclaimed property.

10.    <u>DISMISSAL</u>

Plaintiffs' Counsel will file an Unopposed Motion for one-step Approval of this Joint Stipulation of Settlement. In the motion, the Parties will request that the Court dismiss this Action, without prejudice. The Parties will seek to have the dismissal convert to a dismissal with prejudice 30 days after the conclusion of the 150-day check cashing period.

11.    <u>RETENTION OF JURISDICTION</u>

The Court shall retain exclusive jurisdiction with respect to the implementation and enforcement of the terms of this Joint Stipulation, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Joint Stipulation.

12.    <u>MUTUAL FULL COOPERATION</u>

The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Joint Stipulation, and exercise good-faith efforts to accomplish the terms and conditions of this Joint Stipulation.

13.    <u>CONSTRUCTION</u>

The terms and conditions of this Joint Stipulation are the result of lengthy, intensive, arm's-length negotiations between and among the Parties. Accordingly, this Joint Stipulation is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Joint Stipulation.

14.    <u>INTEGRATION</u>

This Joint Stipulation contains the entire agreement between the Parties relating to the Settlement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. There are no undisclosed side agreements between the Parties or their counsel. No rights hereunder may be waived except in writing.

18

15. <u>BINDING ON SUCCESSORS AND ASSIGNS</u>

This Joint Stipulation shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

16. <u>MODIFICATION</u>

This Joint Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court. This Joint Stipulation may not be discharged except by performance with its terms or by a writing signed by the Parties and approved by the Court.

17. <u>APPLICABLE LAW</u>

The terms of this Joint Stipulation shall be governed by and construed in accordance with Illinois law.

18. <u>COUNTERPARTS</u>

This Joint Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Joint Stipulation, which shall be binding upon and effective as to all Parties. Electronic signatures compliant with the ESIGN Act and signatures transmitted by fax or .pdf shall have the same effect as an original ink signature.

19. <u>PARTIES' AUTHORITY</u>

The signatories hereto represent that they are fully authorized to enter into this Joint Stipulation and bind the respective Parties to its terms and conditions.

Signed this _____ day of September, 2018.

By: _____          Dated:_____
     April Bainter


By: _____          Dated:_____
     One of Plaintiffs' Attorneys

DOUGLAS M. WERMAN
MAUREEN A. SALAS
WERMAN SALAS P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
Facsimile: (312) 419-1025


By: _____          Dated:_____
     Insert Name, Insert title, on behalf of
     Akram Investments, LLC


By: _____          Dated:_____
     Mohammad Maswadi


By: _____          Dated:_____
     Montaser Maswadi


By: _____          Dated:_____
     Thaer Maswadi

# ATTACHMENT A

**Bainter v. Akrum Investments, Inc.**
**Joint Stipulation of Settlement**
**Attachment A**

| | Name | Settlement Award Wages & Deductions | Settlement Award Liquidated Damages |
|---|---|---|---|
| 1 | Adame, Michelle | $ 25.00 | $ 25.00 |
| 2 | Aguilar, Christina | $ 42.12 | $ 7.88 |
| 3 | Alphonse-Balcom, Maureen | $ 25.00 | $ 25.00 |
| 4 | Arce, Yaritza | $ 712.30 | $ 194.01 |
| 5 | Aviles, Lisbethe | $ 25.00 | $ 25.00 |
| 6 | Ayala, Kylie | $ 25.00 | $ 25.00 |
| 7 | Azami, Jalaal | $ 612.37 | $ 268.91 |
| 8 | Bainter, April | $ 441.19 | $ 176.46 |
| 9 | Beasley, Michael | $ 101.82 | $ 5.20 |
| 10 | Bhowanidin, Jonathan | $ 47.18 | $ 47.18 |
| 11 | Bonet, Nelbia | $ 1,986.26 | $ 1,986.26 |
| 12 | Bonilla, Nelson | $ 67.31 | $ - |
| 13 | Bowen JR, James L | $ 68.15 | $ 10.18 |
| 14 | Carmona, Victor A | $ 96.49 | $ - |
| 15 | Castillo, Angel A | $ 183.99 | $ - |
| 16 | Chaudhry, Christopher S | $ 37.30 | $ 12.70 |
| 17 | Cicarini, Christian L | $ 25.00 | $ 25.00 |
| 18 | Cisneros, Erendida | $ 166.88 | $ 156.74 |
| 19 | Colon Calzada, Lymarie | $ 1,176.30 | $ 1,117.13 |
| 20 | Cooper, Javon | $ 25.00 | $ 25.00 |
| 21 | Cora, Yancey | $ 328.46 | $ 51.17 |
| 22 | Corona, Marco | $ 25.00 | $ 25.00 |
| 23 | Cruz, Richie | $ 257.08 | $ 257.08 |
| 24 | Cruz-Mendez, Bianca | $ 270.65 | $ 270.65 |
| 25 | Davenport, Robynn | $ 290.31 | $ 42.49 |
| 26 | Davis, Jami D | $ 232.10 | $ 12.30 |
| 27 | De La Torre, Erica | $ 191.85 | $ 42.09 |
| 28 | Diaz, Lilliana | $ 72.47 | $ 72.47 |
| 29 | Diaz, Wendi | $ 198.07 | $ 56.04 |
| 30 | Escobedo, Martha | $ 50.00 | $ - |
| 31 | Favela, Jorge | $ 67.50 | $ - |
| 32 | Feliciano, Angel | $ 2,541.13 | $ 1,409.09 |
| 33 | Garcia, Alfredo | $ 50.00 | $ - |
| 34 | Garcia, Leslie | $ 50.00 | $ - |
| 35 | Gaston, Jason | $ 1,280.27 | $ 445.86 |
| 36 | Gonzales, Ashley | $ 189.92 | $ 78.98 |
| 37 | Gonzalez, Crystal | $ 152.69 | $ 89.11 |
| 38 | Gonzalez, Marjorie | $ 25.41 | $ 25.41 |
| 39 | Gonzalez, Mercedes | $ 522.85 | $ 302.17 |
| 40 | Gonzalez, Ruby | $ 88.23 | $ 61.18 |
| 41 | Gonzalez, Sarah | $ 25.00 | $ 25.00 |

**Bainter v. Akrum Investments, Inc.**
**Joint Stipulation of Settlement**
**Attachment A**

| | Name | Settlement Award Wages & Deductions | Settlement Award Liquidated Damages |
|---|---|---|---|
| 42 | Gonzalez, Tiffany | $ 25.00 | $ 25.00 |
| 43 | Green, Mellodie | $ 25.00 | $ 25.00 |
| 44 | Grossmann, Melissa G | $ 79.69 | $ 2.39 |
| 45 | Guerrero, Selena | $ 28.46 | $ 21.54 |
| 46 | Gutierrez, Maria A | $ 157.94 | $ 30.68 |
| 47 | Hernandez, Jenisia | $ 47.68 | $ 2.32 |
| 48 | Hernandez, Martamaria | $ 64.77 | $ 64.77 |
| 49 | Irizarry, Cristina E | $ 36.90 | $ 13.10 |
| 50 | Itzep, Marlon | $ 25.00 | $ 25.00 |
| 51 | Johnson, Alexis | $ 50.00 | $ - |
| 52 | Johnson, Janelle | $ 29.44 | $ 29.44 |
| 53 | Jones, Charmaine | $ 25.00 | $ 25.00 |
| 54 | Lee, Caprise | $ 25.00 | $ 25.00 |
| 55 | Liranza, Migdalia | $ 25.00 | $ 25.00 |
| 56 | Lopez, Desarie | $ 38.40 | $ 38.40 |
| 57 | Lopez, Elise | $ 25.00 | $ 25.00 |
| 58 | Losada, Jose | $ 1,809.22 | $ 188.95 |
| 59 | Loyd, Tasheba | $ 355.75 | $ 355.75 |
| 60 | Maisonet, Hector | $ 1,573.50 | $ 748.09 |
| 61 | Martinez, Amanda | $ 2,030.70 | $ 39.04 |
| 62 | Martinez, Benjamin | $ 106.26 | $ 1.59 |
| 63 | Matias, Milagros | $ 713.99 | $ 203.86 |
| 64 | Mauleon, Jamileett E | $ 1,771.29 | $ 1,098.68 |
| 65 | McCray, Jorrdan | $ 25.00 | $ 25.00 |
| 66 | Mcdonald, Samyra | $ 125.86 | $ 10.89 |
| 67 | Medina, Orlando W | $ 126.45 | $ 3.75 |
| 68 | Mendez, Christina M | $ 318.26 | $ 101.02 |
| 69 | Mendez, Javier | $ 147.45 | $ 72.09 |
| 70 | Mendoza, Jason | $ 174.36 | $ 64.22 |
| 71 | Morales, Charlene J | $ 25.00 | $ 25.00 |
| 72 | Moreno, Tania | $ 769.41 | $ 329.92 |
| 73 | Murphy, Jessica | $ 388.19 | $ 32.65 |
| 74 | Nava, Pamela | $ 34.24 | $ 15.76 |
| 75 | Neira, Laura | $ 79.24 | $ 18.85 |
| 76 | Nieves, Miguel | $ 323.84 | $ 323.84 |
| 77 | Ochoa, Juan | $ 238.41 | $ 59.60 |
| 78 | Ojeda, Alexandra | $ 39.97 | $ 10.03 |
| 79 | Olan, Wilma | $ 503.33 | $ 247.78 |
| 80 | Ortiz, Yesenia | $ 64.27 | $ 41.09 |
| 81 | Paz, Jackeline A | $ 25.00 | $ 25.00 |
| 82 | Perez, Emmanuel | $ 136.55 | $ 110.94 |

**Bainter v. Akrum Investments, Inc.**
**Joint Stipulation of Settlement**
**Attachment A**

| | Name | Settlement Award Wages & Deductions | Settlement Award Liquidated Damages |
|---|---|---|---|
| 83 | Perez, Mia | $ 135.33 | $ 135.33 |
| 84 | Peterson, Cynthia | $ 766.95 | $ 288.00 |
| 85 | Printemps, Amiee | $ 233.07 | $ 3.02 |
| 86 | Quen, Melody Y | $ 580.13 | $ 398.01 |
| 87 | Ramirez, Enrique | $ 175.74 | $ 19.11 |
| 88 | Ramos, Michael | $ 665.86 | $ 94.96 |
| 89 | Raymundo, Alex J | $ 791.72 | $ 274.52 |
| 90 | Redmond, Destiny P | $ 435.43 | $ 33.50 |
| 91 | Remedios, Stephen | $ 259.16 | $ 36.94 |
| 92 | Rios, Danika | $ 55.60 | $ 7.29 |
| 93 | Rivera, Carla | $ 433.57 | $ 433.57 |
| 94 | Rodriguez, Alicia | $ 42.79 | $ 7.21 |
| 95 | Rodriguez, Juliana | $ 280.28 | $ 41.81 |
| 96 | Rodriguez, Lauren L | $ 677.57 | $ 37.90 |
| 97 | Rodriguez, Norimar | $ 144.61 | $ 99.96 |
| 98 | Rodriguez-Rivera, Michelle | $ 87.24 | $ 87.24 |
| 99 | Rojo Meza, Guadalupe | $ 176.80 | $ 12.56 |
| 100 | Romo, Evelyn | $ 68.13 | $ 30.75 |
| 101 | Rondon, Adcelys | $ 407.05 | $ 407.05 |
| 102 | Rosero, Erick | $ 25.00 | $ 25.00 |
| 103 | Ruiz, Jose | $ 3,362.82 | $ 2,708.04 |
| 104 | Saenz, Wanda | $ 680.27 | $ 63.38 |
| 105 | Salas, Nathaniel | $ 1,633.29 | $ 599.98 |
| 106 | Sampler, Jasmine | $ 95.00 | $ 68.91 |
| 107 | Santiago, Barron V | $ 1,307.84 | $ 1,307.84 |
| 108 | Shuhayeb, Rawasi | $ 60.11 | $ 2.14 |
| 109 | Siguenza, Benny | $ 25.00 | $ 25.00 |
| 110 | Simmonds, Alex A | $ 25.00 | $ 25.00 |
| 111 | Smith, Tambra | $ 40.39 | $ 40.39 |
| 112 | Tello, Alejandra Y | $ 412.32 | $ 235.77 |
| 113 | Thomas, Norma | $ 386.00 | $ 107.75 |
| 114 | Tomlinson, Gabriella | $ 358.29 | $ 107.91 |
| 115 | Torres-Perez, Wisberty | $ 36.65 | $ 36.65 |
| 116 | Urias, Stephanie | $ 50.00 | $ - |
| 117 | Vargas, Anai | $ 187.78 | $ 39.89 |
| 118 | Vazquez, Mario | $ 58.53 | $ 40.17 |
| 119 | Villanueva, Tabitha | $ 37.29 | $ 12.71 |
| 120 | Watson-Lenworth, Prince | $ 147.07 | $ 147.07 |
| 121 | Wilks, Carlos | $ 50.00 | $ - |
| 122 | Wilson, Ashley | $ 25.00 | $ 25.00 |

# ATTACHMENT B

Dear «FirstName»,

You are receiving this letter because on _____ 2018, Judge Maria Valdez approved a settlement of the lawsuit you joined against Akram Investments, LLC for overtime wages. The case was filed in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:17-cv-07064.

To receive your settlement payment, you must sign and cash or otherwise negotiate the enclosed settlement check within 150 days from the date on the check or it will be void. Your settlement payment was calculated based on the number of overtime hours you worked, the wages you were paid, and if you worked in Illinois, the deductions taken from your wages to account for business losses and errors for the period between October 12, 2014 and July 18, 2018. Your Settlement Payment represents approximately 97% of the total amount of your unpaid overtime wages, liquidated damages, and if you worked in Illinois, the deductions that were taken from your wages for business losses and errors. If you have questions about how your settlement payment was calculated or the payroll records used to calculate your settlement payment, call your attorneys at Werman Salas P.C. at 312-419-1008 as soon as possible and no later than 90 days from the date of this letter.

You will receive an IRS Form W-2 with respect to the portion of your settlement payment that is considered wages, which can be found attached to your settlement check. If required by IRS rules, you will receive an IRS Form 1099 reporting the liquidated damages portion of your settlement, which if required, will be attached to your settlement check. You should keep the IRS Form(s) in a safe place. You will need the form(s) when you file your 2018 income tax returns.  No one is providing you tax advice in connection with the settlement. It is your responsibility to consult with a tax advisor if you have questions about the tax implications of the settlement payment.

**You will not be retaliated against for cashing the check.  It is entirely up to you if you cash your check or not.  Checks that are not cashed within 150 days of issuance shall escheat to the Unclaimed Property Division of the state you worked. Regardless of what you do with the check issued to you, by law and Court order, you have released Defendants from the claims described below.**

This settlement resolves all claims or causes of action from October 1, 2014 through July 18, 2018, for unpaid overtime wages that were asserted in the Action, or that arise out of facts asserted in the Action, including claims under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*,  federal or state law, or common law, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest.

If you worked for Akram Investments, LLC in Illinois, the settlement also resolves all claims or causes of action from October 1, 2014 through July 18, 2018, for unauthorized deductions taken from wages in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/9, including any related claims for penalties, attorneys' fees and costs, and interest.

**If you have any questions, you may call your attorneys at Werman Salas P.C. at (312) 419-1008. Do not call or write the Court or Office of the Clerk to ask questions about the settlement.**

Sincerely,

[Insert Name]
Class Action Settlement Administrator

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

APRIL BAINTER, on behalf of herself and )
all others similarly situated, )
                                )
           Plaintiff, )
                                )      Case No. 1:17-cv-07064
      v.                          )
                                )      Honorable Maria Valdez
AKRAM INVESTMENTS, LLC, )
MOHAMMAD MASWADI, MONTASER )
MASWADI AND THAER MASWADI )
                                )
           Defendants. )

**[PROPOSED] ORDER APPROVING SETTLEMENT, APPOINTING SETTLEMENT
ADMINISTRATOR, APPROVING SERVICE AWARDS AND
<u>ATTORNEY'S FEES AND COSTS</u>**

The above-entitled matter came before the Court on Plaintiffs' Unopposed Motion For

Approval of Settlement, For Appointment of Settlement Administrator, and For Approval of

Service Awards and Attorney's Fees and Costs ("Motion for Settlement Approval"). After

reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in Support

of the Motion for Settlement Approval (the "Memorandum"), the Declaration of Douglas M.

Werman, and the supporting exhibits, the Court hereby orders the following:

**<u>The Settlement Is Approved</u>**

1.      The Court approves and incorporates by reference all of the definitions contained

in the Joint Stipulation of Settlement.

2.      The Court hereby approves the Two Hundred Ten Thousand and No/100ths

Dollars ($210,000.00) collective action settlement. A district court should approve an FLSA

collective action settlement if it was reached as a result of contested litigation and it is a fair and

reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*,

679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697

(1945)); *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D.

Ill. Oct. 6, 2011); *Roberts v. Apple Sauce, Inc.,* No. 3:12-cv-830, 2014 WL 4804252, at *1 (N.D.

Ind. September 25, 2014). "It is a well settled principle that the law generally encourages

settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

3.  Here, the settlement meets the standard for approval. First, the settlement was the

result of contested litigation. The Parties actively litigated the case for one year. The Parties

engaged in discovery and motion practice. The "contested litigation" prong is satisfied.

4.  The second prong of the Court's settlement approval inquiry, whether the

settlement is a fair and reasonable resolution of a *bona fide* dispute, is also satisfied.

5.  Courts assess the following factors when determining whether a settlement is "fair

and reasonable:" (1) whether the parties fairly and honestly negotiated the settlement; (2) if

serious questions of law and fact existed that placed the ultimate outcome of the litigation in

doubt; (3) whether the value of immediate settlement outweigh the mere possibility of future

relief after protracted litigation; and (4) whether the settlement is deemed fair and reasonable by

the Parties. *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *1

(N.D. Ill. April 16, 2018). Each of these factors is satisfied. With regard to the value of the

settlement, the Court notes that even after the payment of Plaintiffs' Attorney's fees and

litigation expenses, the settlement payment for Plaintiff Bainter's individual retaliation claim, all

service awards, and the costs associated with administering the settlement, the Settlement

Payments range from a minimum payment of $50.00 to a maximum payment of $5,961.30 with

the average Settlement Payment of $489.89. The Settlement Payments being distributed from the

Net Settlement Fund after the payment of fees, expenses, service awards, and the award for

Plaintiff Bainter's individual retaliation claim, represent approximately a 97 percent recovery of the overtime wages and liquidated damages Plaintiff contends that Opt-in Plaintiffs are owed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207, and a 97 percent recovery of the deductions Plaintiff contends that Defendants took from Illinois Opt-in Plaintiffs' wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/9. The payments are substantial and provide the Opt-in Plaintiffs with significant relief. By reaching this Settlement, Plaintiffs have eliminated the risk of losing on the merits or having their claims decertified. The settlement result is thus fair and reasonable. *See Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average).

6. The Court also concludes that a *bona fide* dispute existed between the parties. Defendants denied the material allegations of Plaintiffs' claims and any violation of the FLSA and the IWPCA, contested Plaintiff Bainter's individual retaliation claim, and vigorously defended their position throughout the litigation.

7. The formula for allocating the Settlement Payments as set forth in the Joint Stipulation of Settlement is approved as a fair, equitable, and reasonable measure for distributing the Settlement Payment to Settlement Class Members.

8. The Court approves a payment of $10,000 to resolve Named Plaintiff Bainter's individual retaliation claim. This payment shall be paid in addition to Named Plaintiff Bainter's pro rata Settlement Payment.

9. Analytics Consulting LLC is appointed to serve as the neutral, third-party Settlement Administrator in this case and to perform the duties identified in the Joint Stipulation.

**The Settlement Procedure Is Approved**

10.    A one-step settlement approval process is appropriate in collective actions brought pursuant to the FLSA. *See, e.g.*, *Soto,* 2017 WL 3834929, at \*2; *Burns v. Respite Care/Care in the Home Inc.,* No. 17-cv-00917 (N.D. Ill. Mar. 1, 2018) (order approving collective action settlement using a one-step approval process)*; Briggs v. PNC Fin. Servs. Group, Inc.,* No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at \*1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements); *Castillo v. Noodles & Co.,* No. 16-cv-030306, 2016 WL 7451626, at \*1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at \*1 (N.D. Ill. May 15, 2015) (same).  Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure Rule 23 class action.  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA.").  Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions.  *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

11.    The Settlement Timeline and the plan for sending the Settlement Payments as described in the Joint Stipulation of Settlement are approved.

12.    Defendants are ordered to make payments and fund the Settlement Account in

accordance with the terms of the Joint Stipulation of Settlement.

13.     The plan for sending the Settlement Payments as described in the Joint Stipulation of Settlement is approved.

14.     The Settlement Notice attached to the Joint Stipulation of Settlement as Attachment B is approved. The Settlement Administrator shall make any necessary updates to the dates in the Settlement Notice.

**The Service Awards Are Approved**

15.     Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

16.     In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, the Named Plaintiff and the two Opt-in Plaintiffs who gave declarations in this Action satisfy these

factors.

17.     First, the Named Plaintiff took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to 121 other Settlement Class Members who will receive Settlement Awards in amounts ranging from a minimum of $50 to a maximum of $5,961.35.

18.     Second, Named Plaintiff undertook substantial direct and indirect risk.  In agreeing to file this class action suit in her name, Named Plaintiff Bainter assumed significant risk that "should the suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorney's fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted).  "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk*, 2016 WL 5109196, at *3.

19.     Third, Named Plaintiff spent a significant amount of time and effort in pursuing this litigation on behalf of the Settlement Class Members. This included the time and effort she expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, assisting in the preparation and review of the Complaint, participating in interviews, answering discovery, and attending a settlement conference.

20.     The Service Award requested for the Named Plaintiff in the amount of $2,500 is reasonable in light of the amounts of service awards that have been approved by Courts for similar activities. See *Burns,* No. 17-cv-00917 (N.D. Ill. Mar. 1, 2018) (approving service award of $10,000.00 to named plaintiff in FLSA settlement); *Briggs,* 2016 WL 7018566, at * 3 (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles & Co.,* No. 16-cv-03036, 2016 WL 7451623 (N.D. Ill. Dec.

23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards).

21.     Similarly, the two Opt-in Plaintiffs who spent significant time being interviewed for and giving sworn declaration testimony that ultimately benefited the Settlement Class Members are also deserving of Service Awards. *See Soto,* 2018 WL 1875296, at *3  (in FLSA settlement, approving service award of $7,500 to the named plaintiff, $1,000 each to 8 opt-in plaintiffs who gave deposition testimony, and $500 to an Opt-in Plaintiff who gave a declaration but did not sit for a deposition); *Knox v. The Jones Group,* No. 15-cv-1738 SEB-TAB, 2017 WL 3834929, at *3 (S.D. Ind. Aug. 31, 2017) (in FLSA settlement, approving service awards of $7,500 each to two Named Plaintiffs, $1,000 each to 22 opt-in plaintiffs who gave deposition testimony, and $250 each to eight opt-in plaintiffs who gave declarations).

22.     For the foregoing reasons, a Service Award of Two Thousand Five Hundred Dollars ($2,500.00) is approved for Named Plaintiff Bainter. A Service Award of Five Hundred Dollars ($500.00) is approved to each of the two Opt-in Plaintiffs, Lymarie Colon Calzada and Hector Maisonet, who gave declarations in support of Plaintiff's Motion to Bar Contact and Allow Corrective Notice.

23.     Accordingly, the requested Service Awards are reasonable and shall be paid from the Gross Settlement Amount.

**Fees and Costs of the Settlement Administrator and Attorneys Are Approved**

24.     The Court approves the Settlement Administrator's fees and costs of Three Thousand Nine Hundred Thirty-Six Dollars ($3,936.00) to be paid to Analytics Consulting LLC for settlement administration.

25.     The Court grants Plaintiffs' Counsel's request for reimbursement of one thousand

seven hundred thirty-three and 76/100 Dollars ($1,733.76) in actual out-of-pocket expenses incurred in prosecuting this case, including costs for filing and service fees, mailing and delivery costs, and research fees. The Court finds these costs to be reasonably incurred.

26. For the reasons described below, the Court also grants Plaintiffs' Counsel's request for a compromised amount of One Hundred and Thirty Thousand Dollars ($130,000.00) as attorney's fees.

27. Class Counsel seek their attorney's fees on a lodestar basis. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Multiplication of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate equals the lodestar, *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001), which is presumed to be a reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The Seventh Circuit has applied the *Hensley* framework to fee-award determinations for claims brought under the FLSA. See *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544 (7th Cir. 1999).

### Class Counsel's Reasonably Incurred Time

28. In support of their Unopposed Motion for Approval of Settlement, Plaintiffs' Counsel provided the Court a summary of the billable time (and reasonable hourly rates), that they incurred in litigating this FLSA collective action. The billable time by timekeeper and requested hourly rates are as follows:

| Timekeeper | Rate | Time | Amt. Due |
|---|---|---|---|
| Douglas M. Werman | $700 | 101.02 | $70,714.00 |
| Steven P. Schneck | $625 | 22.85 | $14,281.25 |
| Abra Siegel | $575 | 61.89 | $35,586.75 |
| Maureen A. Salas | $550 | 40.88 | $22,484.00 |
| Zachary C. Flowerree | $430 | 13.66 | $5,873.80 |
| Jacqueline Villanueva | $230 | 16.35 | $3,760.50 |
| Cristina Calderon | $230 | 58.50 | $13,455.00 |
| Adriana Rodriguez | $175 | 18.01 | $3,151.75 |

8

| Timekeeper | Rate | Time | Amt. Due |
|---|---|---|---|
| Maria Reyes | $150 | 113.19 | $16,978.50 |
| Jose Maldonado | $150 | 39.18 | $5,877.00 |
| **Total** | | 485.53 | $192,162.55 |

29.     Plaintiffs' Counsel's lodestar noted above is through September 27, 2018 and does not account for the time Plaintiffs' Counsel will expend fulfilling their obligations in the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the Settlement, and responding to Settlement Class Members' inquiries.

30.     Based on the evidentiary materials and declarations submitted by Class Counsel, the Court concludes that the total of 485 hours that Class Counsel expended on the litigation is reasonable in light of the work performed in this collective action involving 122 Plaintiffs.

**Class Counsel's Reasonable Hourly Rates**

31.     Under the lodestar method, for purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community.  *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Where a lawyer commonly charges clients by the hour, the regular billing rate is presumptively the market rate. *Spegon,*175 F.3d at 555; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996).  But if an attorney ordinarily works on a contingent-fee basis, a "court should look to the next best evidence -- the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care*, 90 F.3d at 1310 quoting *Blum,* 465 U.S. at 895 n.11.

32.     Class Counsel provided declarations to establish that the hourly rates they request are the rates they also charge to hourly paying clients, have been awarded by other courts, and are otherwise justified by their experience and recognition as national leaders in advocating the rights of working people in wage and hour litigation.

9

33.    The Court concludes that the following hourly rates are reasonable and supported by the evidentiary showing made by Class Counsel:

| Timekeeper | Rate |
|---|---|
| Douglas M. Werman | $700 |
| Steven P. Schneck | $625 |
| Abra Siegel | $575 |
| Maureen A. Salas | $550 |
| Zachary C. Flowerree | $430 |
| Jackie Villanueva | $230 |
| Cristina Calderon | $230 |
| Adriana Rodriguez | $175 |
| Maria Reyes | $150 |
| Jose Maldonado | $150 |

34.    A Court may consider other factors to determine loadstar amount. These factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the experience, reputation, and ability of the attorneys; (9) the undesirability of the case; and (10) the nature and length of the professional relationship with the client. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310-11 (7th Cir. 1996) ("*People Who Care I*") (citing *Hensley,* 461 U.S. at 436 (1983)).  These factors support the award of Plaintiffs' Attorney's requested fees.

### The Results and the Benefits Conferred Upon the Named Plaintiff and the Settlement Class Members Justify the Requested Award

35.    As described in this Order, the Settlement Payments Settlement Class Members will receive are significant and approximate full relief. Inasmuch as Defendants dispute that their policies violated state and federal wage and hour laws, this is a fair and equitable result for Settlement Class Members.

36.     Nor will Settlement Class Members, with the exception of Named Plaintiff, be required to provide a general release in order to participate in the Settlement. As a result, any claim a Settlement Class Member may have other than those asserted or related to this lawsuit remains unaffected. The absence of a general release exemplifies the results achieved for the Settlement Class.

37.     Based on their rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation with no guarantee of any compensation, and the fair and equitable result achieved for Settlement Class Members, Class Counsel is entitled to a reasonable attorney's fees award in the amount of $130,000.

**Dismissal and Post-Judgment Procedure**

38.     This case is dismissed without prejudice, with leave to reinstate on or before [insert date 180 days from date order is entered].  In the event a motion to reinstate is not filed on or before [insert date 180 days from date order is entered], the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

39.     The Court will retain jurisdiction over this action only for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Joint Stipulation, including for overseeing the distribution of settlement funds.

40.     The parties shall abide by all terms of the Joint Stipulation of Settlement, which are incorporated herein, and this Order.

It is so ORDERED this ___ day of October, 2018

_____
Honorable Maria Valdez
United States Magistrate Judge

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| APRIL BAINTER, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:17-cv-07064 |
| v. | ) ) | Honorable Maria Valdez |
| AKRAM INVESTMENTS, LLC, MOHAMMAD MASWADI, MONTASER MASWADI AND THAER MASWADI | ) ) ) ) | |
| Defendants. | ) | |

**DECLARATION OF DOUGLAS M. WERMAN**

I, Douglas M. Werman, declare as follows:

1.     I am a member in good standing of the Illinois State Bar and am the managing shareholder of Werman Salas P.C.  I submit this declaration in support of Plaintiffs' Unopposed Motion for Approval of Settlement, for Appointment of Settlement Administrator and for Approval of Service Awards and Attorneys' Fees and Costs

2.     I have personal knowledge of the factual matters set forth in this declaration.

**The Litigation**

3.     On September 29, 2017, Named Plaintiff April Bainter ("Named Plaintiff" or "Bainter") filed this Action in the United States District Court for the Northern District of Illinois, on behalf of herself and others similarly situated, alleging that Defendant Akram Investments, LLC ("Akram") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.,* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.,* by failing to pay Bainter and other sales associates overtime wages at the correct rate of pay. Specifically, Bainter alleged that Akram failed to include employees' earned commissions in their regular rate of pay

1

for purposes of calculating the overtime rate, and as a result, paid employees an incorrectly low overtime rate of pay. Bainter also alleged that Akram had a practice of taking unlawful deductions from employees' wages for business losses and/or expenses in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/9. Bainter also alleged that Akram terminated Plaintiff Bainter's employment in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/14(c), because she complained about the deductions that were taken from her wages.

4. In January 2018, the Parties served their Mandatory Initial Discovery Responses on each other, and Defendant Akram produced nearly fifty pages of documents to Bainter. On February 5, 2018, Bainter served Interrogatories, Document Requests, and Requests for Admission on Defendant Akram. Defendant Akram served Document Requests and Interrogatories on Bainter on February 8, 2018. Defendant Akram filed its response to Plaintiff's Requests to Admit on March 7, 2018, and Bainter served her written responses to Defendant Akram's discovery on March 13, 2018.

5. On February 13, 2018, Bainter moved for Step 1 Notice under the FLSA. Defendant Akram did not file a response, and on March 15, 2018, the Court granted Bainter's motion for Step 1 Notice and ordered Defendant Akram to produce to Bainter within fourteen days a Class List of sales associates and other hourly employees who worked in the prior three years. On March 29, 2018, Defendant's counsel provided a Class List to Plaintiff's Counsel which contained 287 names.

6. On March 28, 2018, Bainter moved to compel Defendant Akram to answer her document requests and interrogatories and for attorneys' fees and costs. On April 16, 2018, the Court granted Bainter's motion to compel and for attorney's fees and costs. On April 30, 2018,

Defendant Akram served its response to Bainter's interrogatories and in May 2018, Defendant Akram served its written response to Bainter's Document Requests, along with over 12,000 pages of documents, including time and pay records, in response to Bainter's document requests.

7.     On April 17, 2018, following an analysis and repeated queries by Plaintiffs' counsel as to why the March 29, 2018 Class List contained the names of only 29 current employees, Defendants' counsel provided a second version of the Class List, containing an additional 183 names.

8.     On April 19, 2018, Bainter sent the Court approved Notice to 465 Defendants employees on Defendant Akram's second version of the Class List, informing them of their right to opt-in to this FLSA collective action.

9.     On May 29, 2018, following additional analysis and repeated queries by Plaintiffs' counsel, Defendants' Counsel produced a third version of the Class List, which included 64 additional names. On June 13, 2018, Bainter sent a new tranche of Court approved Notices to previously omitted employees.

10.     On July 9, 2018, Bainter filed a Motion to Bar Contact and Allow Corrective notice following reports from former employees that Defendant Akram had attempted to persuade and intimidate them into not joining the case.

11.     On July 16, 2018, Bainter moved for leave to file an amended complaint adding Mohammad Maswadi, Montaser Maswadi and Thaer Maswadi, the owners and/or managers of Defendant Akram Investments, LLC ("Akram"), as Defendants, following Defendant Akram's claim at the July 11, 2018 settlement conference before Magistrate Judge Valdez that it was financially distressed and may not be able to satisfy a judgment.

12.     On July 20, 2018, the Court granted Bainter's motion to amend the complaint and ordered the individual defendants to file their responsive pleadings by August 10, 2018, and further ordered Defendant Akram to respond to Bainter's motion to bar contacts by August 10, 2018.

13.     The Parties participated in a settlement conference with the Court on July 11, 2018. Prior to the conference, Defendant Akram produced payroll summaries to Plaintiffs' Counsel for the period between October 1, 2014 and February 7, 2018. The payroll summaries identified the amounts Akram's employees were paid and the deductions that were taken from their wages. Defendants later supplemented their production and produced payroll summaries through July 18, 2018.

14.     On May 29, 2018, Plaintiffs issued their settlement conference letter to Defendant Akram, which included Plaintiffs' damage analysis and Plaintiffs' demand to resolve the Action on a class action basis.  Defendant Akram responded to Plaintiffs' demand on June 26, 2018. Akram's response disputed the accuracy of Plaintiffs' damage calculations and the allegations supporting Bainter's retaliatory discharge claim under the IWPCA.

15.     At the settlement conference, Defendant Akram raised for the first time an inability to pay defense. The Parties were not able to resolve the Action at the July 11, 2018 settlement conference. The Parties continued to discuss settlement in the weeks following the settlement conference. The Parties reached an agreement in principle to settle the Action on July 31, 2018.

16.     On August 13, 2018, the parties filed a joint motion to stay the litigation in light of their July 31, 2018 agreement in principle to fully settle this case. The Court granted the

parties' motion to stay the litigation that same day. The Parties then memorialized the terms of the Settlement in the Joint Stipulation of Settlement.

**The Settlement**

17.    Defendants have agreed to pay $210,000.00 to settle the claims in this Action, which shall be used to provide for: (i) Settlement Payments to the Settlement Class Members, (ii) a Settlement Payment to resolve Bainter's individual retaliation claim; (iii) Service Awards to the Named Plaintiff and Opt-In Plaintiffs Lymarie Colon Calzada and Hector Maisonet; (iv) Plaintiffs' Counsel's Attorneys' Fees; (v) Plaintiffs' Counsel's Litigation Expenses; and (vi) Settlement Administration Expenses. The Settlement Class includes only the Named Plaintiff and Opt-in Plaintiffs.[1]

18.    From the $210,000.00 Settlement Fund, $10,000 shall be paid to Plaintiff Bainter to compensate her for her individual retaliation claim and in exchange for providing Defendants with a general release, $130,000.00 will be allocated to Plaintiffs' Counsel's Attorneys' Fees; $1,733.76 will be allocated to Plaintiffs' Counsel's Litigation Expenses; $3,936 will be allocated to Analytics Consulting LLC for the costs it incurs in administering the settlement; $2,500 will be allocated for a Service Award to the Named Plaintiff and $500 each will be allocated for service awards to the two Opt-In Plaintiffs who provided sworn declarations to support Bainter's Motion to Bar Contact and Allow Corrective Notice.  This payment is in addition to the Settlement Payment these Opt-In Plaintiffs receive as their *pro rata* share of the Net Settlement Fund.

---

[1]    The term "Opt-In Plaintiffs" refers to persons who filed a Consent Form to be a party-plaintiff to the Action and who did not withdraw their Consent Form. A list of all individuals meeting the definition of Settlement Class Members, which includes 122 persons, is attached to the Joint Stipulation of Settlement as Attachment A.

19.     The role of the Named Plaintiff in this litigation was crucial. She initiated the lawsuit, reviewed and approved the Complaint, provided written responses to Defendant Akram's discovery requests, produced over 200 pages of documents, conferred with Plaintiffs' Counsel, and attended the settlement conference on July 11, 2018.

20.     Similarly, the Opt-In Plaintiffs who spent significant time being interviewed for and giving sworn declaration testimony to support Bainter's motion are deserving of Service Awards in the amount of $500 each. Opt-in Plaintiff Lymarie Colon Calzada and Hector Maisonet provided evidence to support Bainter's claim that Defendant Akram was interfering with the issuance of the notice and exerting pressure on Opt-in Plaintiffs to withdraw from the Action.  Ms. Colon's and Mr. Maisonet's declarations helped Bainter achieve a successful resolution of the Opt-in Plaintiffs claims.

21.     The requested Service Awards in the total amount of $3,500 represent 1.6% of the Gross Settlement Fund, which is a reasonable percentage.

22.     Each Settlement Class Member's Settlement Payment is identified in Attachment A of the Joint Stipulation.

23.     The Settlement provides for appointment of Analytics Consulting LLC to administer the settlement.

**My Experience**

24.     I graduated from Loyola University of Chicago's School of Law in 1990. I received my undergraduate degree from the University of Illinois, Champaign-Urbana, in 1987. I was admitted to practice law in the State of Illinois in 1990. During the entire course of my legal practice, I have practiced primarily in the area of labor and employment law. Since 2001, my practice has been highly concentrated in representing employees in cases arising under

federal and state wage and hour laws.

I am admitted in the following courts:

| COURT OF ADMISSION | DATE OF ADMISSION |
|---|---|
| State of Illinois | 11/08/1990 |
| Northern District of Illinois | 12/20/1990 |
| Seventh Circuit Court of Appeals | 08/05/1994 |
| Western District of Michigan | 06/24/1999 |
| Central District of Illinois | 03/30/2001 |
| Eastern District of Michigan | 03/25/2003 |
| Southern District of Illinois | 04/08/2010 |
| Northern District of Indiana | 10/25/2010 |
| Second Circuit Court of Appeals | 11/21/2013 |
| Eleventh Circuit Court of Appeals | 05/06/2015 |
| Western District of New York | 07/22/2015 |
| Federal Claims Court | 08/13/2015 |
| Southern District of Indiana | 11/05/2015 |
| Eastern District of Arkansas | 12/04/2015 |
| Tenth Circuit Court of Appeals | 04/21/2016 |
| Ninth Circuit Court of Appeals | 05/20/2016 |
| District of Colorado | 06/06/2017 |

25.    My published cases in the area of wage and hour and employment law exceed 250

decisions and include *Ervin v. OS Rest. Servs.*, 632 F.3d 971 (7th Cir. 2011), the leading

appellate decision addressing the propriety of a combined Rule 23 class action and a FLSA

collective action under 29 U.S.C. § 216(b).

26.    I am a frequent speaker and author on wage and hour matters. Some examples of

my speaking engagements are:

| Chicago Bar Association, 2017, Chicago Fall Seminar on Wage and Hour Litigation | Settlement Strategies: Mediation and Court Approved Settlements in Wage and Hour Litigation |
|---|---|
| National Employment Lawyers Association National Convention, Los Angeles, 2016 | Co-Counseling & Cooperating with Other Plaintiffs' Lawyers |
| National Employment Lawyers Association National Convention, Los Angeles, 2016 | Who is an Employer & Who is an Employee? |
| Federal Bar Association, Chicago Chapter, Moderator, 2016 | Enforcement and Litigation Priorities: EEOC, NLRB, DOL |

| National Employment Lawyers Association National Convention, Washington, D.C., 2015 | Settlement Issues in Settling Wage and Hour Class and Collective Actions |
|---|---|
| American Bar Association, Fair Labor Standards Legislation Committee, Puerto Vallarta, Mexico 2015 | Litigation Issues in Wage and Hour Class and Collective Actions |
| Bridgeport Legal Conferences, Wage and Hour Class Action, Chicago, 2015 | Settlement of Wage and Hour Class Actions |
| Practicing Law Institute, Chicago, 2013, 2014, 2015 | FLSA Wage and Hour Update |
| Chicago Bar Association, Class Litigation Committee, 2011 | Current Terrain in Class Action Litigation |
| Illinois Institute of Continuing Legal Education, 2008 | Litigating Class Action Claims |
| AFL-CIO Lawyers Coordinating Committee, 2008 | Arbitrating Wage and Hour Cases |

27.     I am a member of the Board of Editors of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*," published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. Before being elevated to the Board of Editors in 2016, I was the Senior Chapter Editor of Chapter 20 ("Hybrid" FLSA/State Law Actions") of that same treatise.

28.     At the request of Judge Amy St. Eve who sits on the United States Court of Appeals for the Seventh Circuit, I was 1 of 10 lawyers in the United States (5 lawyers who primarily represent employees and 5 who primarily represent employers) who in 2017 authored FLSA Initial Discovery Protocols designed to streamline discovery of such cases in federal courts. See, http://iaals.du.edu/sites/default/files/documents/publications/flsa_initial_discovery_protocols.pdf The protocols were drafted in conjunction with the Federal Judicial Center (FJC) and the Institute for the Advancement of the American Legal System.

29.     I have been lead counsel in more than seven hundred (700) cases filed in the state and federal courts relating to the recovery of unpaid wages. The majority of these cases proceeded as collective actions under § 216(b) of the FLSA and/or set forth class action claims

8

under Fed. R. Civ. P. 23. These cases, include: *Ortiz v. Manpower, Inc.,* No. 12 C 5248 (N.D. Ill. August 21, 2012) (class comprising over 85,000 employees); *Arrez v. Kelly Services, Inc.,* No. 07 C 1289 (N.D. Ill.) (class action for unpaid wages for over 95,000 employees) and *Polk v. Adecco*, No. 06 CH 13405 (Cook County, Il.)(class action for owed pay for over 36,000 employees); *Romo v. Manpower,* No. 09 C 3429 (N.D. Ill. January 18, 2012); *Robbins v. Blazin Wings, Inc.,* No. 15-CV-6340 CJS, 2016 WL 1068201, at *1 (W.D.N.Y. Mar. 18, 2016)(step one FLSA certification of a collective of 62,000 tipped employees); *Garcia v. JC Penney Corp., Inc.*, No. 12-CV-3687, 2016 WL 878203 (N.D. Ill. Mar. 8, 2016) (class action for owed pay for over 36,000 employees); *Haschak v. Fox & Hound Rest. Grp.,* No. 10 C 8023, 2012 U.S. Dist. 162476, at * 2 (N.D. Ill. Nov. 14, 2012); *Schaefer v. Walker Bros. Enters., Inc.,* No. 10 C 6366, 2012 U.S. Dist. LEXIS 65432, at *4 (N.D. Ill. May 7, 2012); *Kernats v. Comcast Corp. Inc.,* Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct. 20, 2010); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 311 (N.D. Ill. 2010) & *Driver,* No. 06 C 6149, 2012 U.S. Dist. LEXIS 27659, at *15 (N.D. Ill. Mar. 2, 2012) (19,000 tipped employees, decertification denied); *Schmidt v. Smith & Wollensky,* 268 F.R.D. 323 (N.D. Ill. 2010); *Hardaway v. Employbridge of Dallas, et al*., No. 11 C 3200 (N.D. Ill.); *Williams v. Volt*, No. 10 C 3927 (N.D. Ill.)(IWPCA class action for owed pay for over 15,000 employees); *Rosales v. Randstad*, No. 09 C 1706 (N.D. Ill.); *Rusin v. Chicago Tribune,* No. 12 C 1135 (N.D. Ill. February 5, 2013); and *Peraza v. Dominick's Finer Foods, LLC,* No. 11 C 8390 (N.D. Ill. November 20, 2012). These and other cases have successfully recovered owed wages for hundreds of thousands of working people.

30.     Several federal courts have recognized the expertise that me and my firm possess in wage and hour litigation. *Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *4 (N.D.

Ohio May 4, 2018) ("Plaintiffs' Counsel are known and recognized lawyers in wage and hour litigation and have an excellent national reputation in representing tipped employees in this type of case. Courts recognize Plaintiffs' Counsel as leaders in advocating the rights of such workers throughout the United States"); *Sanchez v. Roka Akor Chicago LLC*, No. 14 C 4645, 2017 WL 1425837, at *5-7 (N.D. Ill., Apr. 20, 2017) (Douglas Werman and Werman Salas are "national leaders in advocating the rights of working people in wage and hour litigation" and describing Mr. Werman as a "highly respected and experienced lawyer[]" in "wage and hour cases.)"; *Knox,* 2017 WL 3834929, at *5 (quoting *Mouloki v. Epee,* No. 14 C 5532, 2017 WL 2791215, at *3, n.4 (N.D. Ill. June 27, 2017)); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Castillo, J.) (recognizing Mr. Werman as a "highly experienced attorney" in wage and hour class actions).

31.     In 2012, I was a proud recipient of the Thirteenth Annual Award for Excellence in Pro Bono Service awarded by the United States District Court for the Northern District of Illinois, in conjunction with the Chicago Chapter of the Federal Bar Association.

**My Firm's Lodestar in this Litigation**

**Timekeeping Records**

32.     Plaintiffs' Counsel undertook the representation on a purely contingent basis.

33.     Each attorney and member of Werman Salas' professional staff kept records of the time they worked on this litigation through a software program — commonly known as "Sage Timeslips 2016" — that is loaded onto Werman Salas P.C.'s network server. The Timeslips file created for the instant litigation is named "Bainter, April" Beginning with my initial consultation with the Plaintiffs, whenever I or other members of Werman Salas P.C. performed work on behalf of Plaintiffs in connection with this litigation, time entries were made

in the Timeslip program. These entries consist of a description of the work performed on the date

of the entry and the amount of time spent during the day performing the work described.

### Amount of Reasonable Time Billed

34.     As of September 27, 2018, Class Counsel's reasonably incurred fees were

$192,162.55.  Plaintiffs request for $130,000 in attorneys' fees is approximately a 32% reduction

of their lodestar.

35.     The reasonable time Plaintiffs' Counsel have expended in litigating this complex

collective action over the last year and the reasonable rates for that work, are as follows:

| Timekeeper | Rate | Time | Amt. Due |
|:---:|:---:|:---:|:---:|
| Douglas M. Werman | $700 | 101.02 | $70,714.00 |
| Steven P. Schneck | $625 | 22.85 | $14,281.25 |
| Abra Siegel | $575 | 61.89 | $35,586.75 |
| Maureen A. Salas | $550 | 40.88 | $22,484.00 |
| Zachary C. Flowerree | $430 | 13.66 | $5,873.80 |
| Jacqueline Villanueva | $230 | 16.35 | $3,760.50 |
| Cristina Calderon | $230 | 58.50 | $13,455.00 |
| Adriana Rodriguez | $175 | 18.01 | $3,151.75 |
| Maria Reyes | $150 | 113.19 | $16,978.50 |
| Jose Maldonado | $150 | 39.18 | $5,877.00 |
| **Total** | | 485.53 | $192,162.55 |

The above summary chart eliminates the time spent on this matter by two attorneys (Sarah

Arendt and Wayne Garris) and one paralegal (Julieta Galvan), who each spent less than ten hours

working on this matter.

36.     Approximately one-half of the hours expended in this matter were expended by

paralegals of the firm.

37.     During the course of the litigation, Plaintiffs' Counsel: (i) briefed Bainter's

motion for step-one notice; (ii)  served Defendant Akram with written discovery requests; (iii)

responded to Defendant Akram's written discovery requests; (iv) reviewed over 170 Excel

workbooks that were produced by Defendant Akram; (v) issued a Notice of Lawsuit to similarly-situated employees; (vi) examined Defendant Akram's class lists for completeness and notified Defendant of deficiencies in the class lists; (vii) issued two supplemental Notices of Lawsuit to remedy the deficiencies in Defendant Akram's class lists; (viii) communicated with Opt-in Plaintiffs and recipients of the FLSA Notice; (ix) interviewed and collected evidence from Opt-In Plaintiffs, (x) filed a motion to bar contact and allow corrective notice, (xi) amended the Complaint, (xii) prepared a damage model; (xiii) drafted a settlement conference letter and participated in a settlement conference and subsequent settlement negotiations, and (xiv) prepared the settlement documents and motion to approve the settlement.

38.     Though, consistent with the Parties' Settlement Agreement, Class Counsel are not requesting an Attorneys' Fee award in excess of $130,000.00, they note that the loadstar presented above does not take into consideration time Class Counsel will spend fulfilling their obligations in the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the Settlement, and responding to the Opt-in Plaintiffs' inquiries.

39.     All Counsel are highly qualified and experienced, and each have substantial credentials in federal courts and class and collective action litigation.

**Reasonable Hourly Billing Rates**

40.     In addition to the contingent fee work I perform in class and collective actions, I also have hourly paying clients.

41.     My current rate is $700/hr. I charged that rate for my work as a mediator of national wage and hour collective and class actions and individual employment litigation, most recently in July, 2018. In certain matters I charge a flat rate of $12,000.00 per day for my

mediation services of wage and hour class and collective actions. The flat rate includes preparatory time and time spent in a full day of mediation. The flat rate results in an effective hourly rate in excess of $700 per hour.

42.     I have been awarded $650/hr by courts for work I primarily performed before the 2018 calendar year. For example, in granting a petition for an award of attorney's fees, I was awarded the hourly rate of $650.00 per hour in *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *4 (N.D. Ill. April 16, 2018); *Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *4 (N.D. Ohio May 4, 2018) (awarding Werman Salas lawyers and staff the rates they seek in this case); and *Knox v. Jones Grp.,* No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *4 (S.D. Ind. Aug. 31, 2017); *Sanchez*, 2017 WL 1425837, at *5-7.

43.     Maureen Salas seeks a current rate in the amount of $550/hr. This is a $25 increase in the rate that was deemed reasonable for work performed in 2016 and 2017.  *Soto*, 2018 WL 1875296, at *4; *Knox,* 2017 WL 3834929, at *4; *Sanchez.* 2017 WL 1425837, at *6. Three years ago, in *Kurgan v. Chiro One Wellness Centers, LLC,* No. 10-cv-1899 (N.D. Ill. ECF No. 332, Order Dated April 21, 2015) (Dow, J.), in deciding a contested fee petition, Maureen Salas was awarded a rate of $500 per hour.

44.     Ms. Salas' rate of $550/hr is reasonable in light of her experience. She became a shareholder in the firm in 2013. She has been a speaker on wage and hour matters on a local and national basis. She is also a Contributing Editor to Chapter 19, "Collective Actions," of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*."

45.     The rates the firm seeks for the work of Abra Siegel and Zac Flowerree in this action have been previously deemed reasonable in the context of approving fee awards in other

collective and class actions settlements. *Soto*, 2018 WL 1875296, at *4; *Knox,* 2017 WL 3834929, at *4; *Sanchez*, 2017 WL 1425837, at *6.

46.     The rate the firm seeks in the amount of $625/hr for the work Steven Schneck performed in this action is reasonable in light of Mr. Schneck's experience. Mr. Schneck was admitted to practice law in Illinois in 1988

47.     Jacqueline H. Villanueva, Adriana P. Rodriguez, and Cristina Calderon are current paralegals with Werman Salas P.C., and all have been employed by the firm for more than 11 years. Ms. Villanueva is also a 2015 graduate of Loyola University School of Law and holds a juris doctor degree. As a paralegal with twenty years' experience and a 2015 law school degree, Ms. Villanueva's hourly rate of $230/hr is reasonable.

48.     Ms. Calderon has an accounting degree, is highly skilled in using Microsoft Excel, and frequently testifies in federal court as a summary witness on damages in wage and hour litigation. As a skilled data analyst and testifying witness, Ms. Calderon's hourly rate of $230/hr is reasonable.

49.     This year, in *Soto,* the court approved rates of $150-$175/hr for Werman Salas' administrative staff. *Soto*, 2018 WL 1875296, at *4; *Osman,* 2018 WL 2095172, at *4-5; *Knox,* 2017 WL 3834929, at *4; *Sanchez*. 2017 WL 1425837, at *6. Ms. Rodriguez's rate of $175/hr, Ms. Reyes rate of $150/hr and Mr. Maldonado's rate of $150 are reasonable.

50.     Based on the rates awarded by these other courts in other wage and hour cases, Class Counsel believes the rates requested by Class Counsel are within the prevailing market rates for lawyers and administrative staff members of Plaintiffs' counsel's experience and expertise.

**Plaintiffs' Counsel's Litigation Expenses**

51.     My firm has incurred $1,733.76 in litigation costs. These expenses include, but are not limited to, filing fees, service fees, postage, legal research, and copying costs.

|  | **Amount** |
|---|---|
| Filing and Service Fees | $515 |
| Research (Westlaw) | $118.06 |
| Communications (Notice, FedEx, Postage, etc.) | $1,065.70 |
| File Set Up | $35.00 |
| **Total Costs** | $1,733.76 |

The expenses incurred are reasonable and their reimbursement should be approved.

**The Settlement Should Be Approved**

52.     The Settlement is a result of contested litigation given the fact that the settlement has been reached in the context of this lawsuit. The lawsuit has been pending for one year and was resolved only after the Parties participated in a Settlement Conference with the Court and after the Parties engaged in several additional weeks of negotiations following the Settlement Conference with the Court.

53.     Moreover, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. As explained above, discovery in this case has been extensive, and Defendants provided Plaintiffs' Counsel with comprehensive payroll records for all Settlement Class Members for the entire Settlement Time Period. For these reasons, the Court should conclude that the proposed Settlement is the product of contested litigation.

54.     The Settlement was the product of arms' length negotiations among experienced counsel. The Settlement was reached after the Parties engaged in discovery, after Bainter's FLSA claim was certified as a collective action and after the opt-in period expired, after the

Parties participated in a settlement conference with the Court, and after Defendants disclosed Akram's financial records to Plaintiffs' Counsel.

55.     Even after the payment of attorney's fees and litigation expenses, all service payments, the costs of the Settlement Administrator, and Plaintiff Bainter's individual retaliation payment, the settlement payments range from a minimum payment of $50.00 to a maximum payment of $5,961.30, with the average Settlement Payment of $489.89.

56.     Using the computations described in Section 6 of the Stipulation, Plaintiffs' Counsel computes that Settlement Class Members are owed a total of $61,514.21, consisting of $24,858.27 in unpaid overtime wages, $20,131.66 in liquidated damages, and $16,524.28 in deductions owed to Settlement Class Members who worked in Illinois. The Net Settlement Fund equals $59,766.24, or approximately 97% of the overtime wages, liquidated damages, and deductions owed to Settlement Class Members even *after* the payment of Plaintiff Bainter's individual retaliation settlement payment, attorney's fees and litigation expenses, all service payments, and the costs of the Settlement Administrator.

**The Named Plaintiff and Her Attorney Support the Settlement**

57.     Plaintiffs' Counsel have comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement.

58.     Based on Plaintiffs' Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Plaintiffs' Counsel believe the Settlement is fair and reasonable.

59.     Named Plaintiff approved the terms of the Settlement.

60.     I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is

true and correct.

Executed this October 3, 2018, Chicago, Illinois.

Douglas M. Werman

Werman Salas P.C.
77 West Washington Street, Ste. 1402
Chicago, Illinois 60602
(312) 419-1008
dwerman@flsalaw.com

17